IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PAUL GIAMMARINARO,** : | |
| Plaintiff, : | |
| : | |
| v. : | Civil No. 5:23-CV-04086-JMG |
| : | |
| **NORTHAMPTON COUNTY,** *et al.*, : | |
| Defendants. : | |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                                              December 3, 2024

**I.      INTRODUCTION**

Plaintiff Paul Giammarinaro alleges that he was subject to the use of excessive force by employees of the Northampton County Sheriff's Office during an arrest after he turned himself in on an outstanding bench warrant. He claims that his arm was fractured during this event. Plaintiff has brought claims against the Deputy Sheriffs who were present at the time of his arrest: George Volpe, James Riley, Mark Marino, and Lori Neff. He alleges his constitutional rights were violated and brings a claim under 42 U.S.C. § 1983 ("Section 1983") against each of these defendants—he claims excessive force by Defendants Volpe, Riley, and Marino, and he claims Defendant Neff failed to intervene.[1] In this dispute, issues of material fact exist to foreclose summary judgment. Also, Defendants are not entitled to qualified immunity for these alleged constitutional violations. Accordingly, for the reasons set forth in this memorandum, the Court denies Defendants' Motion

---

[1] Plaintiff brought several other claims in his Complaint (ECF No. 1) that have since been voluntarily dismissed. *See* Order at ECF No. 48 (dismissing Count II and Count IV of Plaintiff's Complaint); Order at ECF No. 53 (dismissing Count V and Count VI of Plaintiff's Complaint); Order at ECF No. 54 (dismissing Count VII of Plaintiff's Complaint).

1

for Summary Judgment (ECF No. 44).

## II.     BACKGROUND

In October of 2020, Plaintiff was charged with Recklessly Endangering Another Person in Northampton County, Pennsylvania. *See* Defs.' Statement of Undisp. Facts ("ECF No. 45") at ¶ 10. This charge was the result of Plaintiff climbing a billboard along Route 22 and hanging a banner. *Id.* Plaintiff was scheduled to attend a pre-trial conference with the Northampton Court of Common Pleas addressing this charge on September 15, 2021. *See id.* at ¶ 15-16. The court issued a bench warrant for his failure to appear on September 17, 2021. *See id.* at ¶ 16.

On October 27, 2021, Plaintiff went to the Northampton County Courthouse to address his outstanding bench warrant. *See id.* at ¶ 20-22. He first went to the District Attorney's Office and was then led to the Sheriff's Office. *Id.* at ¶ 23. Once at the Sheriff's Office, Plaintiff became aware that because of the bench warrant, he would have to be taken to the county prison. *See id.* at ¶ 25.

The parties dispute what happened next. Defendants claim that Defendant Riley informed Plaintiff that he would have to be escorted to the county prison. *Id.* Defendants contacted the court's pretrial services department, then relayed to Plaintiff that he would not be allowed to return to deal with the bench warrant and he would have to be taken into custody. *Id.* at ¶ 30. Then, Plaintiff yelled obscenities at Defendants and became irate. *See id.* at ¶¶ 31, 33. Plaintiff attempted to make a phone call, Defendants told him he would not be able to, and Defendant Volpe removed his phone from him. *Id.* at ¶¶ 32-33. Defendant Riley then proceeded to attempt to place Plaintiff in an escort position, but was unable to do so because, as Defendants allege, "Plaintiff balled up his hands into fists and moved his arms such that Lieutenant Volpe and Deputy Sheriff Riley were unable to gain control over him." *Id.* at ¶ 34. Plaintiff was also insubordinate and did not follow Defendants' commands. *Id.* Plaintiff was not subdued until he was pinned to the floor, and he

continued to refuse to obey Defendants' commands. *Id.* at ¶¶ 37-38. Plaintiff was then handcuffed once on the floor. *Id.* at ¶ 40.

Plaintiff's factual narrative paints a far different picture. Plaintiff states that when he became aware that he would have to be transported to the county prison, he told the Defendants that he wanted to let his wife know. *See* Pl.'s Statement of Undisp. Facts ("ECF No. 49-1") at ¶¶ 30-31. Then, as Plaintiff began to dial his wife, Defendants Volpe and Riley "immediately ripped him out the chair, knocked the phone from his hand, dragged him across the room and then slammed him into the glass partition." *Id.* at ¶ 32. Plaintiff states that as this was happening, he attempted to put his hands behind his back, recognizing he would have to be handcuffed, but he states that Defendants never instructed him to do so. *Id.* He also denies Defendants ever telling him that he was under arrest. *Id.* Plaintiff likewise denies that he refused to obey Defendants' commands or that he resisted arrest in any way. *Id.* at ¶¶ 34-35.

### III.  LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "genuine" when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 618 (3d Cir. 2020). A fact is material if "it might affect the outcome of the suit under governing law." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party moving for summary judgment must "identify[ ] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). In response, the nonmoving

party must then "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Anderson*, 477 U.S. at 252).

In applying this standard, the court must "construe the evidence in the light most favorable to the non-moving party." *Anderson*, 477 U.S. at 255. At the summary judgment stage, the court's role is not to weigh the evidence and determine the ultimate truth of the allegations. *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019); *see also InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 160 (3d Cir. 2003) ("When analyzing the evidence under this summary judgment standard, a court is not to weigh the evidence or make credibility determinations; these tasks are left for the fact-finder." (internal quotation marks omitted)). Instead, the court's task is to determine whether there remains a genuine issue of fact for trial. *Id.*

## IV. DISCUSSION & ANALYSIS

### a. Excessive Force – Defendants Marino, Volpe, and Riley – 42 U.S.C. § 1983

Plaintiff brings a Section 1983 claim against Defendants Marino, Volpe, and Riley. Section 1983. "In order to recover under § 1983, a plaintiff must show that the defendant, under color of state law, subjected the plaintiff to a deprivation of a right, privilege, or immunity secured by the constitution or laws of the United States." *Renda v. King*, 347 F.3d 550, 557 (3d Cir. 2003) (citing 42 U.S.C. § 1983). However, "Section 1983 is not a source of substantive rights and does not provide redress for common law torts—the plaintiff must allege a violation of a federal right." *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000). Here, Plaintiff alleges that Defendants used excessive forced when they arrested—or "seized"—him in violation of the Fourth

Amendment. *See* U.S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches *and seizures*, shall not be violated . . ." (emphasis added)); *see also Graham v. Connor*, 490 U.S. 386, 394 (1989) ("Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment."); *Tennessee v. Garner*, 471 U.S. 1, 7 (1985) (defining "seizure" as occurring "[w]henever an officer restrains the freedom of a person to walk away").

Defendants assert that they are entitled to qualified immunity over this claim of excessive force. *See El*, 975 F.3d at 334 ("Police officers, embodying the authority of the state, are liable under 42 U.S.C. § 1983 when they violate someone's constitutional rights, unless they are protected by qualified immunity." (quoting *Curley v. Klem*, 499 F.3d 199, 206 (3d Cir. 2007))). "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

The qualified immunity inquiry is two-pronged: (1) whether the facts, taken in the light most favorable to the nonmoving party show the officer's conduct violated a federal right, and (2) whether the right in question was clearly established at the time of the violation. *See Tolan v. Cotton*, 572 U.S. 650, 655-56 (2014). If either of these prongs fail, qualified immunity applies. *See James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012). The Court will address these prongs in turn.

### i. There are Issues of Fact as to Whether Defendants Violated Plaintiff's Constitutional Right

"To prevail on a Fourth Amendment excessive-force claim, a plaintiff must show that a seizure occurred and that it was unreasonable under the circumstances." *Lamont v. New Jersey*, 637 F.3d 177, 183 (3d Cir. 2011). A reasonability determination is based on numerous factors and is made on a case-by-case basis. *See Graham*, 490 U.S. at 396 (stating that "the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application" and "its proper application requires careful attention to the facts and circumstances of each particular case." (citation omitted)). A court is to consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* A court also considers "the physical injury to the plaintiff, the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *El v. City of Pittsburgh*, 975 F.3d 327, 332 (3d Cir. 2020); *see also Saintil v. Borough v. Carteret*, No. 22-2898, 2024 WL 3565308, *8 n.16 (3d Cir. July 29, 2024) (listing all of the factors to be considered).

The officer's reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment" (internal citation omitted)). This is an objective standard. *El*, 975 F.3d at 336 ("When determining the reasonableness of an allegedly excessive use of force, the standard is whether the [ ] officer's actions were objectively reasonable in light of the facts and circumstances, regardless of the officer's intent or motivation." (cleaned up)).

Here, examining the factors in the light most favorable to Plaintiff, it is evident that Plaintiff has put forth sufficient evidence so that a jury could determine that his Fourth Amendment right against unreasonable seizure was violated by the Defendants. First, Plaintiff was turning himself in for an active bench warrant for the underlying crime of Recklessly Endangering Another Person—which resulted from Plaintiff hanging a banner on a billboard. *See* ECF No. 45 at ¶ 10. This crime is a second-degree misdemeanor in the Commonwealth of Pennsylvania. *See* 18 Pa. C. S. § 2705. This was not a violent crime and could hardly said to be severe.[2] This is one factor the jury can consider in making its determination as to whether Plaintiff's right was violated.

Next, a reasonable juror could determine that Plaintiff did not pose an immediate safety threat. *See El*, 975 F.3d at 337. In this case, there is a video of the incident. *See* ECF No. 46, Ex. H. "When the events at issue are captured on video, a court must consider that evidence in determining whether there is any genuine dispute as to a material fact." *Williams v. Russell*, Civ. A. No. 20-CV-3511, 2024 WL 2188914, at *8 (E.D. Pa. May 15, 2024) (citing *Scott v. Harris*, 550 U.S. 372, 379-81 (2007) ("[T]he Court must view the facts in the light depicted by the video.")). The video here clearly shows that Plaintiff was seated and was not brought to his feet until the Deputy Sheriffs pulled him up. *See* ECF No. 46, Ex. H at 11:40:35. Given this, a jury could find that he was not an immediate threat to anyone's safety and that the officers unreasonably escalated the situation by pulling him up from the chair and bringing him over to the glass partition. *See* ECF No. 49-1 at ¶ 32.

---

[2] Plaintiff argues that the Court should consider the underlying crime of Recklessly Endangering Another Person in weighing this factor. *See* ECF No. 49 at 11. Defendants' briefing does not discuss this factor. Whether the Court examines the underlying crime or the failure to appear, itself, does not change its ultimate determination, as a reasonable juror could determine that either offense is not violent or severe.

There is an issue of fact as to the third factor—whether Plaintiff was actively resisting arrest or attempting to evade arrest by flight. While the video is clear that Plaintiff did not try to flee the Sheriffs office, Defendants contend that Plaintiff resisted arrest. The Court agrees with the Plaintiff that, "the video evidence is at best inconclusive" as to this point. Pl.'s Brief in Opp. ("ECF No. 49-3") at 11. The fact that the video is without sound adds to this ambiguity. Defendants argue that "Plaintiff balled up his hands into fists and moved his arms such that [Defendants] were unable to gain control over him." ECF No. 45 at ¶ 34. Then, they contend that Plaintiff was "yell[ing] and ignor[ing] verbal commands" which led to Defendants bringing him down to the floor. *Id.* at ¶ 36. Plaintiff, however, denies that he resisted arrest or ignored commands. *See* ECF No. 49-1 at ¶ 34. The video must be examined by a factfinder in conjunction with relevant testimony, and then the factfinder can weigh whether there was active resistance that may have justified Defendants' actions.

The jury will also consider the physical injuries suffered by Plaintiff. *See El*, 975 F.3d at 332. Plaintiff states that he "suffered a spiral fracture of his left ulnar shaft" and as a result of this injury he required "an Open Reduction and Internal Fixation surgical procedure." *See* ECF No. 49-1 at ¶ 54. Further, he contends that he developed cubital tunnel syndrome because of this injury and may require more surgery in the future. *Id.* at ¶ 55. Defendants deny that these injuries were caused by Defendants, *see* ECF No. 50 at ¶¶ 54-55, however these facts are viewed in the light most favorable to Plaintiff for the purposes of summary judgment. *See El*, 975 F.3d at 337.

The next factor is "the possibility that the persons subject to the police action are themselves violent or dangerous." *El*, 975 F.3d at 336 (quoting *Sharrar*, 128 F.3d at 822). This is another factor that a reasonable juror could determine weighs in favor of Plaintiff. There is little indication in the record that Plaintiff was violent or dangerous. At most, Defendants argue that

Plaintiff yelled obscenities at the Defendants and became irate. *See* ECF No. 45 at ¶¶ 31, 33. A jury could find that Plaintiff's purportedly passive resistance does not lend to the notion that Plaintiff was a danger to the Defendants.

The jury will consider whether the action took place in the context of effecting an arrest. The jury could determine that this factor weighs in favor of Defendants, as Defendants claim they informed him that he had to be transported to the county prison, and that his insubordination led to his arrest. *See* ECF No. 45 at ¶ 33. However, Plaintiff claims this did not happen; he claims that Defendants never told him that he needed to be taken into custody and he came to this realization on his own. *See* ECF No. 49-1 at ¶ 33. Additionally, Plaintiff claims that he was never told that he was under arrest or that he should put his hands behind his back. *See id.* at ¶ 32. Again, this will be weighed in a jury's ultimate determination.

A reasonable juror could also determine that the final three factors weigh in favor of Plaintiff. Plaintiff was not armed, and Defendants had no indication that he had any weapons on him. Further, there were four deputies present during the incident—each of the remaining named Defendants—and Plaintiff was by himself. This was not a situation where Defendants had to contend with multiple suspects or offenders at once. Lastly, the duration of the incident could be viewed to weigh in favor of Plaintiff. "[P]olice officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397. The incident here unfolded over a little more than thirty seconds and was preceded by several minutes of interaction with the Plaintiff. *See* ECF No. 46, Ex. H at 11:40:34-11:41:10. A reasonable juror could determine that the video does not portray a triggering event that necessitates the immediate use of force by the Defendants, but rather the force appears to follow Plaintiff's attempted use of his cell phone.

9

In examining these factors, a jury could determine that the Defendants' actions were unreasonable, and therefore find that Plaintiff's right against unreasonable seizure was violated.[3] Because the Court has determined that there is sufficient evidence to foreclose summary judgment as to whether there has been a constitutional violation, the Court will next move to whether the right was clearly established.

### ii. The Constitutional Right was Clearly Defined

In analyzing the second prong, the court's "focus is on whether the officer had fair notice that [his] conduct was unlawful, so reasonableness is judged against the backdrop of the law at the time of the conduct." *El*, 975 F.3d at 334 (internal quotation marks omitted). The Court looks to factually similar cases. *See id.* ("Although there need not be a case directly on point for a right to be clearly established, existing precedent must have placed the constitutional question beyond debate." (cleaned up) (internal quotation marks omitted)).

The Court must determine whether it was clearly established that a purportedly non-violent,

---

[3] The Court will briefly address the cases cited by Defendants in their brief. First, in *Brown v. Makofka*, 644 F. App'x 139 (3d Cir. 2016), the Third Circuit affirmed a district court's grant of summary judgment on an excessive force claim where the plaintiff "physically resist[ed] arrest by crossing his arms and gripp[ed] his protective vest so that the officers could not handcuff him." *Id.* at 143. This occurred after the arresting officer ordered the plaintiff to produce his documentation five times. *Id.* at 140. This is different from the circumstances here, where there is at least a question of fact as to whether Plaintiff actively resisted the Defendants.

Second, in *Merritt v. Mancini*, Civ. A. No. 19-2785, 2022 WL 4082455 (E.D. Pa. Sept. 6, 2022), the district court deemed the defendants' actions reasonable as a matter of law and granted the defendants' motion for summary judgment. There, the plaintiff "was combative and resistant from the very beginning of his interactions with the officers." *Id.* at *6. Again, here there is a question of fact to this point.

Third, in *Williams v. Wagner*, Civ. A. No. 23-CV-01512, 2024 WL 1743755 (E.D. Pa. Apr. 23, 2024), the plaintiff there was physically combative with the officers and "displayed a consistent pattern of refusal to follow commands." *Id.* at *4. Moreover, he actively resisted the officers by eventually "twisting and turning his body" and even sw[inging] his fist" at one of the officers. *Id.* Such active resistance distinguishes *Williams* from the present case.

10

unarmed arrestee has the right to be free from an excessive use of force when he passively resists arrest. The Court determines that such a right was clearly established at the time of this incident.[4]

Recently, the Third Circuit issued its opinion in *Hughes v. Herbster*, No. 23-3122, 2024 WL 4707882 (3d Cir. Nov. 7, 2024), which examined an excessive force claim factually similar to the one at hand. There, the defendant pulled over the plaintiff on May 19, 2019, for having tinted windows. *See id.* at *1. The plaintiff was on the phone with family members during the traffic stop, and the defendant repeatedly ordered her to end her phone call. *Id.* The plaintiff alleged that the defendant "opened [plaintiff's] door, unbuckled her seatbelt, and began pulling her out of the car." *Id.* at *2. There was also video evidence in *Hughes*, and the court determined that the "footage showed [defendant] grabbing [plaintiff] by the back of the neck with his left hand while his right forearm crossed beneath her chin . . . . The physical altercation lasted 45 seconds and ended with [plaintiff] pinned down on the ground." *Id.* The plaintiff there also alleged more injuries once she was pinned down. *See id.*

The panel found that "a reasonable juror could conclude that [plaintiff] was not suspected of having committed a serious crime, posed no immediate threat to the officers, was not attempting to flee from arrest, and was outnumbered." *Id.* Given this, the Court affirmed the district court's denial of qualified immunity, finding that "the right to be free from unreasonable force in like circumstances is clearly established under Third Circuit law." *Id.* The panel cited two previous cases in its reasoning. First, the panel cited *Kopec v. Tate*, 361 F.3d 772 (3d Cir. 2004), where the

---

[4] Defendants rely on *Thompkins v. Municipality of Penn Hills*, No. 22-3012, 2023 WL 6970160 (3d Cir. Oct. 23, 2023), to refute the argument that the right was clearly established. The Court finds this case distinguishable. In *Thompkins*, the Third Circuit determined officers had qualified immunity when they "execut[ed] a holding technique to effectuate [an] arrest" when the suspect was "flailing around." *Id.* at *2. That is different from the facts here where the incident started when Plaintiff alleges he was sitting down until he was dragged up by Defendants. It is not clear from the video evidence that Plaintiff's actions classify as "flailing around."

court held that there existed a "right . . . to be free from the use of excessive force in the course of handcuffing." *Hughes*, 2024 WL 4707882, at *4 (quoting *Kopec*, 361 F.3d at 778). Next, the panel wrote that the Third Circuit has previously recognized "that an unarmed individual who is not suspected of a serious crime—including one who is verbally uncooperative or passively resists the police—has the right not to be subjected to physical force such as being grabbed, dragged, or taken down." *Id.* (quoting *El*, 975 F.3d at 340).

     *Hughes* is helpful in analyzing whether there was such a clearly established right against excessive force here. To start, the events at issue in *Hughes* took place over two years before the events at hand, *see id.* at *1, so it follows that if the court found that these rights were clearly established at the time of *Hughes*, then they also were clearly established during the time of Plaintiff's arrest. Plaintiff, too, was not armed and was not suspected of a serious crime. *See* ECF No. 45 at ¶ 10. Plaintiff alleges that he was sitting in a chair in the lobby of the Sheriff's office, and he attempted to make a phone call. *See* ECF No. 49-1 at ¶ 50. Plaintiff then alleges that he was pulled up from the chair, pinned to the ground, and that his arm was broken in the course of Defendants' attempts to handcuff him. *See id.* at ¶¶ 51, 54. The case at hand is a case of "like circumstances" where Plaintiff had the clearly established "right to be free from unreasonable force" during the course of his arrest. *Hughes*, 2024 WL 4707882, at *4. Because this right was clearly established, Defendants were on notice that the excessive force that Plaintiff alleges was prohibited.

     Because a reasonable jury could find that there was violation of a constitutional right and because this right to be free from excessive force was clearly established at the time of Plaintiff's arrest, Defendants cannot invoke qualified immunity in this case.

### b. Failure to Intervene – Defendant Neff – 42 U.S.C. § 1983

Plaintiff also brings a Section 1983 claim against Defendant Neff on the theory of bystander liability.[5] "Bystander liability is not a 'distinct claim,' but a theory through which an otherwise passive defendant may be held liable for a constitutional violation." *Gleason v. East Norriton Twp.*, Civ. A. No. 11-cv-6273, 2012 WL 3024011, at *6 (E.D. Pa. July 24, 2012). There are three elements for a Section 1983 claim on the theory of bystander liability, and the plaintiff must show that the defendant officer "(1) knows that a fellow officer is violating an individual's constitutional right; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Id.* at *5 (*Fernandors v. Dist. of Columbia*, 382 F. Supp. 2d 63, 72 (D.D.C. 2005)); *see also Smith v. Mensinger*, 293 F.3d 641, 651 (3d Cir. 2002) ("[A]n officer is only liable if there is a realistic and reasonable opportunity to intervene.").

Plaintiff alleges that Defendant Neff could have intervened as the other Defendants brought him down. Ultimately, although it is a closer call, there is enough evidence here for this claim to survive summary judgment. Defendant Neff was present for the entire incident. In particular, she stood right by the side of the other Defendants as they pinned Plaintiff to the floor, and a reasonable juror could find that she watched as the Defendants twisted his arms behind his back. *See* ECF No. 46, Ex. H at 11:40:46-11:40:55.

A key factor that is indicative of whether there was a reasonable opportunity to intervene is the length of the use of force. *See Parnell v. Jackson Twp.*, Civ. A. No. 21-19326, 2024 WL 2767896, at *8 (D.N.J. May 30, 2024) ("The length of time needed to create genuine issue of fact is specific to the circumstances of each case."). Here, the use of force took place approximately

---

[5] While Plaintiff alleges this Count against Defendants Volpe, Riley, Marino, and Neff in his Complaint, his briefing only addresses the claim in the context of Defendant Neff. *See* ECF No. 49 at 13-14. The Court's analysis will follow Plaintiff's lead.

Case 5:23-cv-04086-JMG   Document 56   Filed 12/03/24   Page 14 of 15

over a period of a little over thirty seconds. *See* ECF No. 46, Ex. H at 11:40:34-11:41:10. The Court finds this period of time is sufficient to create a genuine issue of fact as to Defendant Neff's reasonability. *See Parnell*, 2024 WL 2767896, at *8 ("[S]ome courts declin[e] to grant summary judgment when the force occurred over a period of thirty second or more." (citing *Smith v. Mesinger*, 293 F.3d 641, 650 (3d Cir. 2002))); *cf El*, 975 F.3d 335-36 (finding that no reasonable juror could conclude that defendant could have intervened over the course of "roughly five seconds").

While it is uncontested the Defendant Neff did not use any force on Plaintiff, a reasonable juror could find that she had a reasonable opportunity to prevent harm to Plaintiff and failed to do so. Accordingly, the Court denies summary judgment as to the Section 1983 claim against Defendant Neff on the theory of failure to intervene.[6]

### c. Punitive Damages

Finally, Plaintiff has put forth sufficient evidence to defeat Defendants' claim for summary judgment as to the issue of punitive damages. First, as Plaintiff notes, punitive damages are permitted in Section 1983 cases. *See Smith v. Wade*, 461 U.S. 30, 56 (1983) (holding that "a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."). Defendants' brief in support of summary judgment as to punitive damages misconstrues the standard. Defendants state that "there is no

---

[6] To the extent that Defendants invoke the defense of qualified immunity on the failure to intervene claim, it fails. *See Smith v. McKinney*, Case No. 2:22-cv-02983-JDW, 2023 WL 6543531, at *7 (E.D. Pa. Oct. 6, 2023) (holding plaintiff's right to have defendant intervene during incident of excessive use of force was "clearly established at the time of his arrest" (citing *Mensinger*, 293 F.3d at 650)); *see also Hughes*, 2024 WL 4707882, at *5 ("[Plaintiff's] failure to intervene claim hinges on whether her excessive force claim succeeds, and on the disputed factual question of whether [defendant] had a real opportunity to intervene based on the video footage.").

14

evidence that the deputies had an evil motive or intent or had any personal animosity towards Plaintiff." ECF No. 44-1, at 15. However, again, punitive damages may be imposed if the plaintiff demonstrates "reckless or callous indifference to the federally protected rights of others." *See Smith*, 461 U.S. at 56. The Court rejects Defendants' conclusory argument and determines that there is sufficient evidence in the record for a jury to award punitive damages based on this correct legal standard.

## V.  CONCLUSION

Whether the members of a jury will find for Plaintiff is a question for another day, but on this record, there is sufficient evidence to permit him to bring his claims before them. For the foregoing reasons, Defendants Riley, Neff, Marino, and Volpe's Motion for Summary Judgment (ECF No. 44) is denied. An appropriate order follows.

BY THE COURT:


*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge